IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ANDREW AMORT,

        Plaintiff,

   v.

NWFF, Inc., an Oregon corporation;
and WILLIAM COHNSTEADT, JOHN
BERGER and JEANNIE BERGER,
individually,

        Defendants.

No. 6:11-cv-6396-AA
OPINION AND ORDER

AIKEN, Chief Judge:

    Plaintiff filed suit alleging retaliatory discharge in violation of Title VII, 42 U.S.C. 2000e, et seq., as well as state law claims of retaliatory discharge, whistleblower retaliation, discrimination for aiding in a legal proceeding, libel and false light. In their amended answer, defendants assert eight counterclaims against plaintiff, including fraud, breach of the duties of good faith and fair dealing and loyalty, negligence, tortious interference with contract, conversion, and misappropriation of trade secrets.

1    - OPINION AND ORDER

Plaintiff urges this court to decline supplemental jurisdiction over defendants' counterclaims or to dismiss them for failure to state a claim. Fed. R. Civ. P. 12(b)(1), (6). Plaintiff also moves to strike defendants' counterclaims as impermissible attacks on protected speech under Or. Rev. Stat. § 31.150(2). The motions are denied.

## BACKGROUND

The following allegations are taken from plaintiff's Complaint and defendants' Amended Answer.

Defendant NWFF, Inc. (NWFF) is an Oregon corporation with its principal place of business in Philomath, Oregon. NWFF provides environmental cleanup services throughout the United States. NWFF employed plaintiff from April 2010 through January 31, 2011.

Defendant John Berger was President of NWFF during plaintiff's employment and was a member of the Board of Directors for NWFF. Defendants William Cohnsteadt and Jeannie Berger were also members of the Board of Directors during plaintiff's employment.

NWFF hired plaintiff in April 2010 to assist with increasing the number of contracts and projects secured by the company. Effective July 2010, plaintiff was promoted to corporate manager of NWFF and received a salary increase. Defendants allege that plaintiff misrepresented his background, qualifications and management skills, both before and during his employment, and that NWFF relied on these misrepresentations when giving plaintiff increased responsibility and compensation.

During plaintiff's employment, he performed work at home using a laptop computer provided by NWFF. In the course of working from his home, plaintiff would download NWFF files to a jump drive.

2     - OPINION AND ORDER

In August 2010, plaintiff believed that NWFF needed an employee to perform human resources duties. Plaintiff spoke with Berger and suggested that NWFF hire plaintiff's wife to work in a human resources role on a part-time basis. Berger agreed and Ms. Amort was hired by NWFF as a part-time, temporary employee. Defendants allege that plaintiff and Ms. Amort misrepresented her qualifications, and that Ms. Amort was not qualified to perform the human resources work for which she was hired. Defendants also allege that Ms. Amort failed to perform numerous tasks she was assigned and lacked the requisite knowledge to complete them, and that plaintiff elevated Ms. Amort's position without the Board's knowledge or consent. Plaintiff denies these allegations.

In the fall of 2010, issues arose regarding NWFF's tax compliance and liabilities. NWFF ultimately terminated its accountant as a result of plaintiff's complaints and hired a tax advisor suggested by plaintiff. Plaintiff contends that John Berger became upset when plaintiff and the tax advisor informed Berger that certain tax deductions made by NWFF were unlawful. Defendants allege that plaintiff failed to set aside adequate funds to cover NWFF's tax liabilities and that the advisor suggested by plaintiff was ill-suited to provide tax advice to NWFF.

In December 2010, plaintiff alleges that he and Ms. Amort learned about sexual harassment allegations against John Berger. Ms. Amort contacted the Oregon Bureau of Labor and Industries (BOLI) for advice and determined that she needed to investigate the allegations. Ms. Amort allegedly notified NWFF's counsel and its Chief Operating Officer, Roman Geigle, that she was investigating sexual harassment allegations against John Berger and requested certain information.

On December 30, 2010, NWFF terminated Ms. Amort's employment. The parties dispute the reasons for her termination. Defendants allege that after Ms. Amort's termination, plaintiff copied all NWFF files from the server onto a jump drive without notifying NWFF or the Board.

3     - OPINION AND ORDER

On January 14, 2011, plaintiff met with John Berger and Geigle and was informed that his compensation package would be reduced due to a lack of revenues. Plaintiff maintained that his salary reduction was retaliatory and based on complaints he made about Ms. Amort's termination and NWFF's lack of compliance with state and federal medical leave requirements.

On or about January 19, 2011, plaintiff was placed on paid, administrative leave.

On January 31, 2011 plaintiff attended a Board meeting and was informed of deficiencies in his performance and his alleged misrepresentations to the Board. Defendants allege that plaintiff made numerous management decisions that were detrimental to NWFF's interest and effectuated without the Board's knowledge or permission. Defendants also allege that plaintiff attempted to "rebrand" NWFF and portray Board members in a negative light, among numerous other complaints. Am. Answer ¶¶ 104-140. Plaintiff maintains he was never told of such deficiencies and was not allowed to respond in any substantive way, and that the allegations are without merit. During the same meeting, plaintiff also was instructed to return all documents related to his employment with NWFF that were in his possession.

In February 2011, plaintiff provided a disk with NWFF documents to NWFF's counsel. Defendants maintain that plaintiff failed to return the files he downloaded to the jump drive and provided only a copy of the information "with the metadata omitted." Am. Answer ¶ 135.

On March 7, 2011, Ms. Amort filed suit against NWFF in state court alleging whistleblower retaliation. During that proceeding, plaintiff provided Ms. Amort's counsel with NWFF documents, all of which defendants contend are proprietary and confidential. Specifically, defendants allege that plaintiff gave Ms. Amort's counsel the jump drive, the original files plaintiff downloaded, and the metadata. NWFF sought to add plaintiff as a third-party plaintiff in the state action and allege claims

against him. NWFF also sought to disqualify Ms. Amort's counsel on grounds that they had improperly obtained and retained proprietary and confidential documents belonging to NWFF. The state court denied NWFF's motions, and Ms. Amort's action has since been resolved.

On March 15, 2011, plaintiff filed a complaint against NWFF with BOLI and obtained a right to sue letter on October 31, 2011.

On December 5, 2011, plaintiff filed this action. Plaintiff alleges that he was terminated in retaliation of his support for Ms. Amort's sexual harassment investigation and for opposing such harassment, in violation of Title VII and Or. Rev. Stat. § 659A.030(1)(f). Plaintiff also alleges state law claims of whistleblower retaliation, discrimination for aiding in criminal or civil proceedings, libel, and false light. In turn, defendants assert counterclaims of fraud, breach of the duties of good faith and fair dealing and loyalty, negligence, tortious interference with contract, conversion, and misappropriation of trade secrets.

## DISCUSSION

A. Motion to Dismiss

Plaintiff first moves for dismissal based on lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Plaintiff argues that defendants' counterclaims all arise under state law and predominate substantially over plaintiff's federal law claim. Thus, plaintiff maintains that supplemental jurisdiction is inappropriate and urges the court to decline jurisdiction.

Plaintiff is correct that defendants must rely on supplemental jurisdiction to invoke this court's authority to hear their counterclaims. 28 U.S.C. § 1367. Supplemental jurisdiction allows a federal district court to exercise jurisdiction over non-federal claims if they "are so related to claims in the action within such original jurisdiction that they form part of the same case or

5    - OPINION AND ORDER

controversy." Id. § 1367(a). Even if the federal and non-federal claims are substantially related, the court may decline to exercise jurisdiction if the non-federal claim "raises a novel or complex issue of State law" or "substantially predominates" over the federal claims. See id. § 1367(c) (1), (2).

Here, I find that defendants' counterclaims are substantially related to plaintiff's Title VII claim and form part of the same case or controversy. The bases of the counterclaims relate to plaintiff's employment and the alleged reasons for his termination and will undoubtedly serve as defenses to plaintiff's federal retaliation claim. Further, I do not find that the counterclaims involve novel or complex issues of state law, or that they will predominate over plaintiff's federal claim any more than plaintiff's asserted state law claims. Therefore, I find appropriate the exercise of supplemental jurisdiction over defendants' counterclaims.

Plaintiff also moves to dismiss defendants' counterclaims for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), a claim is construed in favor of the pleading party, and its factual allegations are taken as true. Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010). However, the court need not accept as true "conclusory" allegations, "unwarranted deductions of fact, or unreasonable inferences." Id. Rather, to survive a motion to dismiss, a claim's " non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the [party] to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007).

Plaintiff argues that defendants' first counterclaim for attorneys fees is not a cognizable legal claim and must be dismissed. Defendants respond that they will be entitled to the recovery of fees

if plaintiff's claims are found to be without reasonable basis, and therefore they may assert a claim for attorney fees. See Or. Rev. Stat. §§ 20.105, 20.107. I find this issue to be one of semantics rather than substance. Regardless of how it is pled, defendants are providing plaintiff notice that they will seek recovery of fees if they prevail and establish that plaintiff's claims are frivolous. Thus, I decline to dismiss the claim.

Plaintiff also argues that defendants' second counterclaim for fraud fails to meet the heightened pleading standard applicable to fraud claims, as do the remaining counterclaims that rely on allegations of fraudulent conduct. I disagree.

Federal Civil Procedure Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." In other words, allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Under Oregon law, the elements of a fraud claim include:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

Webb v. Clark, 274 Or. 387, 391, 546 P.2d 1078 (1976) (citation omitted); Johnsen v. Mel-Ken Motors, Inc., 134 Or. App. 81, 89, 894 P.2d 540 (1995).

Defendants' allegations in support of their second counterclaim include these elements and meet the heightened pleading standard. Specifically, defendants allege that plaintiff made several

7    - OPINION AND ORDER

false and material representations regarding his and Ms. Amort's qualifications and his management actions, that plaintiff knew such representations were false, that plaintiff intended defendants to rely on his false representations, and that defendants did so to their detriment, thus causing injury. Am. Answer ¶¶ 104-34, 135-140. Defendants describe plaintiff's alleged fraudulent misrepresentations and conduct with specificity, thus giving adequate notice. Accordingly, I find no basis to dismiss defendants' fraud counterclaim.

With respect to defendants' third, fourth, fifth and sixth counterclaims, plaintiff asserts that they are likewise subject to the heightened pleading standard because they are based, in part, on plaintiff's alleged fraudulent conduct. Even if a heightened pleading standard applied to these claims, defendants allege the nature of plaintiff's conduct with adequate specificity. Am Answer ¶¶ 104-140.

Plaintiff also argues that the allegations supporting these counterclaims are "vague," unsupported and without merit, though plaintiff provides no meaningful analysis or discussion. Regardless, at the pleading stage, all facts asserted by defendants are accepted as true and construed in their favor. So construed, defendants allege sufficient facts to support plausible claims for breach of the duties of good faith and fair dealing and loyalty, negligence, and tortious interference with a contract. Conway v. Pac. Univ., 324 Or. 231, 236-40, 924 P.2d 818 (1996); McGanty v. Staudenraus, 321 Or. 532, 535, 901 P.2d 841 (1995); Uptown Heights Assoc. v. Seafirst Corp., 320 Or. 638, 645, 891 P.2d 639 (1995).

Finally, plaintiff moves to dismiss plaintiff's seventh and eight counterclaims, alleging conversion and misappropriation of trade secrets, on grounds of issue preclusion. In these counterclaims, defendants allege that plaintiff accessed confidential and proprietary information of NWFF, downloaded NWFF files from the server and "secretly" took them for his own use, deleted

8        - OPINION AND ORDER

NWFF files from company computers, and shared confidential and proprietary records to a third party without the consent of NWFF. Plaintiff maintains that these claims are precluded due the findings of the state court in the action brought by Ms. Amort against NWFF.

There, NWFF sought to add plaintiff as a third party and assert claims against him. Its motion was denied. NWFF also sought to disqualify counsel for Ms. Amort on grounds that they had received confidential and propriety NWFF files from plaintiff and/or Ms. Amort, and that the documents were inappropriately retained by them. In denying the motion to disqualify counsel, the state court found that neither Ms. Amort nor her counsel improperly retained, possessed, or failed to return or produce privileged or confidential files owned by NWFF. Plaintiff argues that the rulings by the state court now preclude defendants' counterclaims for conversion and misappropriation of trade secrets raised in this action. I disagree.

> For issue preclusion to apply, five conjunctive requirements must be satisfied: (1) the issues in the two proceedings must be "identical"; (2) the issue must have been "actually litigated" in the earlier proceeding and "essential to a final decision on the merits in the prior proceeding"; (3) the party sought to be precluded must have had "a full and fair opportunity to be heard on that issue"; (4) the party sought to be precluded must have been a party or in privity with a party to the prior proceeding; and (5) the prior proceeding must have been "the type of proceeding to which this court will give preclusive effect."

Hunt v. City of Eugene, 249 Or. App. 410, 426-27, 278 P.3d 70 (2012) (quoting Nelson v. Emerald People's Utility Dist., 318 Or. 99, 204, 862 P.2d 1293 (1993)).

Importantly, the state court issued its rulings the context of NWFF's motions to add/amend and to disqualify counsel, not in the context of a claim for conversion or misappropriation against plaintiff. Thus, I cannot find that the issue of conversion or misappropriation was "actually litigated" and "essential to a final decision on the merits." Further, the state court addressed the conduct of Ms.

9       - OPINION AND ORDER

Amort and her counsel, not the conduct of plaintiff, and I cannot find that the issues are "identical" or that defendants had a "full and fair opportunity" to be heard with respect to plaintiff's conduct. Finally, as stated above, this case remains at the pleading stage, and defendants' counterclaims arguably encompasses conduct beyond the scope of the state court findings.

Therefore, I decline to find that issue preclusion bars defendants' seventh and eight counterclaims, and the motion to dismiss is denied.

B. Motion to Strike

Plaintiff also moves to strike defendants' counterclaims as impermissible attacks on his protected activity of pursuing claims against defendants and participating in the lawsuit brought by Ms. Amort. Under Or. Rev. Stat. § 31.150(2), a party may move to strike a claim "that arises out of:"

> (a) Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law;
>
> (b) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;
>
> (c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or
>
> (d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

As the moving party, plaintiff bears the burden of making a prima facie showing that the counterclaims "arise[] out of a statement, document or conduct described in subsection (2)." Or. Rev. Stat. § 31.150(3). If plaintiff meets that burden, defendants must establish a probability that they "will prevail on the claim by presenting substantial evidence to support a prima facie case." Id.

Defendants argue persuasively that plaintiff fails to show that he engaged in activity protected by Or. Rev. Stat. § 31.150(2), in that his activities did not relate to a matter of public interest. See Defs.' Opp'n at 14-17. However, I need not make such a finding, as plaintiff fails to show that defendants' counterclaims "arise out of" his alleged protected activity.

Contrary to plaintiff's assertions, plaintiff's acts of filing a BOLI or federal complaint or giving testimony in Ms. Amort's lawsuit do not form the factual bases of defendants' counterclaims; defendants' counterclaims simply do not rely on any statement made or document submitted by plaintiff in these proceedings. See Gardner v. Martino, 563 F.3d 981, 985 (9th Cir. 2009) (noting that claim was based on statements made in a syndicated radio broadcast). Rather, defendants' counterclaims are based on and arise from plaintiff's conduct while employed at NWFF, including the alleged misrepresentations and management decisions he made before and during his employment, and the alleged unlawful retention and disclosure of files downloaded from the NWFF server, files that allegedly contain proprietary and confidential information. Am. Answer ¶¶ 104-140. The fact that defendants raised counterclaims after plaintiff filed suit or that they obtained evidence to bolster their counterclaims during the course of Ms. Amort's lawsuit does not render their counterclaims "arising out of" plaintiff's participation in those proceedings. To the contrary, defendants' could assert their counterclaims regardless of whether plaintiff filed a BOLI complaint or civil action or provided testimony in Ms. Amort's lawsuit.

In sum, defendants' counterclaims do not arise from protected activity under Or. Rev. Stat. § 31.150(2), and the motion to strike is denied. Consequently, I need not weigh the evidence presented by defendants in support of each counterclaim or address plaintiff's objections to such evidence.

Finally, defendants seek attorney fees if plaintiff's motion to strike is denied. Or. Rev. Stat. § 31.152(3) (allowing fees if a motion to strike is deemed frivolous or intended to cause delay). Although I disagree with plaintiff's legal arguments and analysis, I cannot find from this record that the motion was frivolous or filed solely for the purpose of delay.

## CONCLUSION

For the foregoing reasons, plaintiff's Motions to Dismiss and to Strike (docs. 15, 18) are DENIED.

IT IS SO ORDERED.

Dated this 27th day of August, 2012.

       /s/ Ann Aiken
       Ann Aiken
       United States District Judge